# UNITED STATES DISTRICT COURT

for the
District of Colorado

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*

The e-mail account and information associated with erbolduan@outlook.com that is in the possession of Microsoft Corporation, whose office is located at One Microsoft Way, Redmond, WA 98052-6399, more fully described in Attachment A, attached hereto.

)
)
)
)
)
)
)
)

Case No.   17-sw-06374-MJW

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the   State and   District of   Colorado and elsewhere   *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

X  evidence of a crime;

X   contraband, fruits of crime, or other items illegally possessed;

X  property designed for use, intended for use, or used in committing a crime;

☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of   18   U.S.C. 875(c) and 2261A(2)(B) , and the application is based on these facts:

X  Continued on the attached affidavit, which is incorporated by reference.

☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_s/Jeffrey W. Holmes_
*Applicant's signature*

Jeffrey W. Holmes, Special Agent
*Printed name and title*

Sworn to before me and:   ☐ signed in my presence.
☒ submitted, attested to, and acknowledged by reliable electronic means.

Date:  **20 Oct 2017**

*Judge's signature*

City and state:   Denver, CO

Michael J. Watanabe U.S. Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

Information associated with the e-mail account known as "erbolduan@outlook.com" (hereinafter and in Attachment B "SUBJECT ACCOUNT") which are in the possession of or under the control of the E-mail and Internet Service Provider Microsoft Corporation, whose office is located at One Microsoft Way, Redmond, WA 98052-6399 (hereinafter and in Attachment B "PROVIDER.")

**ATTACHMENT B**
**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

Pursuant to 18 U.S.C. § 2703, PROVIDER as described in Attachment A is hereby ordered as follows:

## I.   SEARCH PROCEDURE

a.   The search warrant will be presented to personnel of the PROVIDER, who will be directed to isolate those accounts and files described in Section II below regardless of whether such information is stored, held or maintained inside or outside of the United States;

b.   In order to minimize any disruption of computer service to innocent third parties, the PROVIDER'S employees and/or law enforcement personnel trained in the operation of computers will create an exact duplicate of the computer accounts and files described in Section II below, including an exact duplicate of all information stored in the computer accounts and files described therein;

c.   The PROVIDER'S employees will provide the exact duplicate in electronic form of the accounts and files described in Section II below and all information stored in those accounts and files to the agent who serves the search warrant; and

d.   Law enforcement personnel will thereafter review all information and records received from the PROVIDER'S employees to determine the information to be seized by law enforcement personnel specified in Section III.

## II.   FILES AND ACCOUNTS TO BE DISCLOSED BY THE PROVIDER'S EMPLOYEES

a.   For the SUBJECT ACCOUNT listed in Attachment A [for the time period from the date the SUBJECT ACCOUNT was created, to the date the PROVIDER collects the data in response to this order the PROVIDER shall disclose the following information, and the disclosure shall include all information even if deleted yet still available to the PROVIDER, and all information preserved pursuant to a request under 18 U.S.C. § 2703(f):

   1.   The contents of all e-mails and attachments associated with the SUBJECT ACCOUNT, including deleted, stored, or preserved (pursuant to 18 U.S.C. § 2703(f) or otherwise) e-mails sent to and from the account, draft e-mails, existing printouts of any such e-mails, the source and destination addresses associated with each e-mail, the date and time at which each e-mail was sent, and the size and length of each e-mail;

   2.   All records or other information regarding the identification of the SUBJECT ACCOUNT, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative e-mail addresses, phone numbers, or other identifying information provided during registration, other associated e-mail accounts, all screen names associated with the subscribers and/or accounts, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

   3.   All records indicating the services available to subscribers of the SUBJECT ACCOUNT;

4.   The services the SUBJECT ACCOUNT utilized and all records generated by those services;

5.   All records or other information stored at any time by an individual using the SUBJECT ACCOUNT, including address books, contact and buddy lists, calendar data, pictures, and files;

6.   All records pertaining to communications between the PROVIDER and any person regarding the SUBJECT ACCOUNT, including contacts with support services and records of actions taken.

7.   For all information responsive to this warrant, regardless of whether such information is stored, held or maintained inside or outside of the United States, the physical location or locations where the information is stored.

b.   The Provider is hereby ordered to disclose the above information to the government within 14 days of the issuance of this warrant.

### III.   INFORMATION TO BE SEIZED BY LAW ENFORCEMENT PERSONNEL

a.   All information described above in Section II that constitutes fruits, evidence and instrumentalities of violations of 18 USC 875(c) and 2261A(2)(B):

1.   All electronic mail, attachments, and related computer files that identify the account user, individuals, or correspondents engaged in computer intrusion and related fraudulent activity, in violation of 18 USC 875(c) and 2261A(2)(B);

2.   All electronic mail, attachments, and related computer files related to victims of internet stalking, harassment, or threats.

3.   Records relating to who created, used, or communicated with the SUBJECT ACCOUNT or identifier, including records about their identities and whereabouts.

### IV.  ORDER OF NON-DISCLOSURE AND TO KEEP ACCOUNT ACTIVE

a.   Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), the Court orders PROVIDER not to disclose the existence of this search warrant to any person, including the subscriber, other than its personnel essential for compliance with the execution of this warrant.

b.   The Court further orders PROVIDER to continue to maintain the SUBJECT ACCOUNT in an open and active status so as not to disrupt this ongoing investigation.

### V.   PROVIDER PROCEDURES

a.   The PROVIDER shall deliver the information set forth above within **14 days** of the service of this warrant and the PROVIDER shall send the information via facsimile or United States mail, and where maintained in electronic form, on CD-ROM or an equivalent electronic medium, to:

       Special Agent Jeffrey W. Holmes
       FBI – Denver
       8000 E. 36th Ave.
       Denver, CO 80238
       jwholmes@fbi.gov

b. Pursuant to 2703(g), the presence of an agent is not required for service or execution of this warrant.

## VI.    DEFINITIONS

a. As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored.

# AFFIDAVIT

I, Jeffrey W. Holmes being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. I am a Special Agent of the Federal Bureau of Investigation (FBI), and have been since 5 August 2007. Prior to my employment, I received a Bachelor's of Science degree in Computer Science and worked for several years as a computer programmer and network and systems administrator. As part of my duties, I investigate criminal violations relating to computer intrusions in violation of Title 18, United States Code, Sections 1030 and other computer related crimes. I have received training and instruction in the field of investigations of computer intrusions and other computer related crimes and have had the opportunity to participate in investigations relating to computer intrusions and fraudulent activity. Additionally, I have received training and am certified to process and examine digital evidence.

2. This affidavit is submitted in support of an application for a search warrant for the e-mail account described in Attachment A (hereinafter "SUBJECT ACCOUNT,"), there being probable cause to believe that located in the SUBJECT ACCOUNT described in Attachment A are items described in Attachment B, being evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 875(c) and 2261A(2)(B).

3. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Section 875(c) and 2261A(2)(B) are presently located at the Subject Account.

4. The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

## DEFINITIONS

5. The following definition applies to this Affidavit and Attachment B to this Affidavit.

6. In this affidavit, the terms "computers" or "digital storage media" or "digital storage devices" may be used interchangeably, and are intended to include any physical object upon which computer data can be recorded as well as all types of electronic, magnetic, optical, electrochemical, or other high speed data processing devices capable of performing logical, arithmetic, or storage functions, including desktop and laptop computers, mobile phones, tablets, server computers, game consoles, network hardware, hard disk drives, RAM, floppy disks, flash memory, CDs, DVDs, and other magnetic or optical storage media.

## BACKGROUND REGARDING THE INTERNET

7. As part of my training, I have become familiar with the Internet (also commonly known as the World Wide Web), which is a global network of computers and other electronic devices that communicate with each other using various means, including standard telephone lines, high-speed telecommunications links (e.g., copper and fiber optic cable), and wireless transmissions, including satellite. Due to the structure of the Internet, connections between computers on the Internet routinely cross state and international borders, even when the computers communicating with each other are in the same state. Individuals and entities use the Internet to gain access to a wide variety of information; to send information to, and receive information from, other individuals; to conduct commercial transactions; and to communicate via electronic mail ("e-mail"). An individual who wants to use Internet e-mail must first obtain an account with a computer that is

5

linked to the Internet – for example, through a university, an employer, or a commercial service – which is called an "Internet Service Provider" or "ISP" (see definition of "Internet Service Provider" below). Once the individual has accessed the Internet, that individual can use an e-mail account provided by their ISP or they can use the Internet to connect to public web-based e-mail services to send and receive e-mail. Web-based e-mail services provide e-mail accounts that may be accessed from any computer that has access to the Internet. In addition, the individual can access websites using web browsers to view or download content, or make purchases. The Internet may also be used to access online groups such as chat rooms, websites, social media, newsgroups and video conferencing.

8. **E-mail Provider**:

    A. In my training and experience, I have learned that Microsoft Corporation (hereinafter "Provider") provides a variety of on-line services, including search tools, advertising services, communication and publishing tools, development tools, mapping tools, cloud storage, desktop applications, and electronic mail ("e-mail") access, to the general public. Subscribers obtain an account by registering with Provider. During the registration process, Provider asks subscribers to provide basic personal information. Most public providers do not validate the information provided, however. Nevertheless, the computers of Provider are likely to contain stored electronic communications (including retrieved and un-retrieved e-mail for Provider subscribers) and information concerning subscribers and their use of Provider services, such as account access information, e-mail transaction information, and account application information.

    B. In general, an e-mail that is sent to a Provider subscriber is stored in the subscriber's "mail box" on Provider servers until the subscriber deletes the e-mail, or until a preservation letter is sent to the e-mail provider. If the subscriber does not delete the message, or if the e-mail provider preserves the content of the account pursuant to a preservation letter, the message can remain on Provider servers indefinitely.

    C. When the subscriber sends an e-mail, it is initiated at the user's computer, transferred via the Internet to Provider servers, and then transmitted to its end destination. Provider often saves a copy of the e-mail sent. Unless the sender of the e-mail specifically deletes the e-mail, or if the e-mail provider preserves the content of the account pursuant to a preservation letter, the e-mail can remain on the system indefinitely.

    D. Provider subscribers can also store files, including e-mails, address books, contact or buddy lists, pictures, and other files, on servers maintained and/or owned by Provider.

9. **Internet Service Providers ("ISPs")**:

    A. ISPs are commercial organizations that are in business to provide individuals and businesses access to the Internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a telephone or cable modem, the subscriber can establish communication with an ISP over a telephone line or through a cable system, and can access the Internet by using his or her account name and personal password.

    B. ISPs maintain records ("ISP records") pertaining to their subscribers (regardless of whether those

subscribers are individuals or entities).  These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format.  ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use.  This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files.  Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory.  Such temporary, incidental storage is defined by statute as "electronic storage," see 18 U.S.C. § 2510(17), and the provider of such a service is an "electronic communications service."  An "electronic communications service," as defined by statute, is "any service which provides to users thereof the ability to send or receive wire or electronic communications.  18 U.S.C. § 2510(15).  A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long term storage services to the public for electronic data and files, is defined by statute as providing a "remote computing service."  18 U.S.C. § 2711(2).

10. **Internet Protocol Address ("IP Address")**: Every computer or device on the Internet is referenced by a unique Internet Protocol address the same way every telephone has a unique telephone number. An IP address is a series of numbers separated by periods; an example of an IP address is 192.168.10.102.  Each time an individual accesses the Internet, the computer from which that individual initiates access is assigned an IP address.  A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers.  Most ISPs employ dynamic IP addressing, that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet.  A dynamic IP address is reserved by an ISP to be shared among a group of computers over a period of time. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records.  Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial-up session.  Once the session ends, the IP address is available for the next dial-up customer.  On the other hand, some ISPs, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer.  In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer.  A modem is an electronic device that allows one computer to communicate with another.

11. A host computer is one that is attached to a dedicated network and serves many users.  These host computers are sometimes commercial online services, which allow subscribers to connect to a network, which is in turn connected to their host systems.  These service providers allow electronic mail service between their own subscribers, and those of other networks or individuals on the Internet.

12. Some of these systems offer their subscribers the ability to communicate publicly or privately with each other in real time in the form of "chat rooms."  Contact with others online can be either open and anonymous, or private and personal in the form of person-to-person instant messages.

13. Further, the online services allow a user to set up an account with a remote computing service that provides e-mail services as well as electronic storage of computer files in any variety of formats.  A user can set up an online storage account from any computer with access to the Internet.  These online storage accounts are often free but can involve a charge.  A subscriber assigned a free online storage account frequently can set up such accounts by providing limited identifying information.  Any information provided is frequently fictitious in an attempt to preserve the anonymity of the user.  Consequently, even if it is known that a particular user is a subscriber of a free online storage service, the service provider frequently will have no records in that subscriber's name.  Instead, the online service will only be able to identify files, that are

associated with a "login," or unique, user-created identity the subscriber uses to "log on" to the online service.  Such an online storage account is particularly useful to create an anonymous account to conduct and facilitate illegal activity. Such a subscriber can collect, store, view and distribute electronic files directly from the online service.  Consequently, files that may be evidence of a crime may also have minimal contact with the subscriber's home computer.  The subscriber can also manipulate the files on an online storage service from any computer connected to the Internet.  Nonetheless, evidence of an online storage account is often found on a home computer of a user subscribing to such a service.  Evidence of an online storage account may take the form of passwords located in encrypted, archived[1], or other files on the user's home computer.  Other evidence can also be found through unique software that may exist on a user's home computer that has been developed by the online storage service.  This unique software will frequently contain evidence not only of the existence of such accounts, but the login and password.

## INVESTIGATION AND SUBJECT OF SEARCH WARRANT

14. This investigation was initiated after it was determined there were multiple female college athletes, located in Colorado, who were the victims of repeated internet harassment and threats. The investigation determined that in addition to the four victims in Colorado there were more than 50 other victims of similar activity across the United States.

15. The subject would download images of the victims from various public internet and social networking sites such as Instagram.com. The subject would then find pornographic images of women who resembled the victim. The subject would upload the victim's legitimate, non-pornographic images, along with the pornographic images of the similar looking female to various pornographic websites. The subject would often include the victim's name, school, and contact information. The apparent purpose was to portray the victim as involved in pornography and promiscuous behavior.

16. The subject would often email links to the pornographic postings to the victim and people the victim associated with such as school professors, coaches, teammates, and family members. The subject would often send threatening emails to the victim's discussing how he was stalking them and planning to rape, torture and kill them.

17. The majority of this activity was routed through The Onion Router network. Based on my training and experience, I know that The Onion Router (TOR) is a distributed network of relays run by volunteers from all over the world. The purpose is to relay Internet activity through various relays to prevent someone from successfully monitoring the communications or determining the user's physical location. Internet traffic routed through TOR is encrypted and untraceable.

18. The investigation determined that Eric Ronald Bolduan, of Rochester, Minnesota was likely responsible for the harassment and threats. A search warrant was obtained for the Bolduan residence, at 5278 51st NW, Rochester, Minnesota (hereinafter "Bolduan residence"), and was executed on 7 June 2017. Eric Bolduan consented to an interview during the search and admitted to being responsible for all of the harassment and threatening activity targeting Nicole and Jennifer DeSouchet, Kaleigh Kroeker, Tayler Tuttle, and other identified victims in the investigation. A large volume of digital evidence was seized from the residence and review of the evidence is still under way. Information corroborating Bolduan's statements, that he was responsible for the activity, has been found on the evidence seized from the residence, including names and pictures of victims identified in the investigation.

19. Bolduan has continued to be somewhat cooperative with the investigation and has responded to emails asking about additional victims or incidents. Selections from the email conversation below provide insight

---

1 Archive files are files which generally contain other files in a compressed format.  Thus, Archive files may be thought of as containers containing other files.  Archive files are commonly referred to as "zip" or "zipped" files.

into Bolduan's intent with regards to the harassing and threatening activity (emphasis added):

> From: Holmes, Jeffrey W. (DN) (FBI) <jwholmes@fbi.gov>
> Sent: Wednesday, August 23, 2017 5:39 PM
> To: Eric Bolduan
> Subject: RE: Other Emails and Messages
>
> Eric,
>
> Thanks for the reply, I appreciate it. I have a few follow up questions. I understand you're working during the day so just respond when you can.
>
> I've attached a PDF document that I'd like you to review. Most of this is duplicative of the last email I sent but this document contains the actual emails which were sent to Nicki Desouchet's father and employer and a few other things. The last email I sent just had descriptions of them. There should be 21 pages. If you can review and answer the following, I'd appreciate it.
>
> 1 – In the previous email you said you were responsible for the descriptions of the emails sent to Nicki's father and her employer. These are the actual emails. Can you review and confirm these are what you were responsible for?
> 2 - Likewise with the Wordpress comment's to Jenny Desouchet's blog?
> 3 - Likewise with the pictures posted to imagefap.com, fapdu.com, and myex.com?
> 4 – Regarding the email addresses ryan.paulson@yahoo.com and mathew_desmet@yahoo.com. Did you actually create those accounts or did you just enter those in the web form? I ask because most of the time you used easy.com, yandex.com, gmx.com, etc. I didn't come across many yahoo.com accounts.
> 5 – Was the Tom Murphy Facebook message from you?
>
> …
>
> One last thing. I think I understand what your motivation and intent with the threats and harassment was but I want to make sure. When we talked you mentioned about how you were trying to draw attention to the revenge porn activity and get people to take it more seriously. Also, you admitted that the activity also came from anger and frustration you had from your impotence medical condition that you were taking out on these girls. Is that accurate and complete? Anything else you would add? Would you agree that the intent was to harass the girls or in the case of the threats to make them fear for their lives? I think you described it in your email about the activity with Marissa Beucler when you said "They were written out of anger, with the intent of upsetting and frightening the victim." I'm assuming that was the situation with all of the girls, is that accurate?
>
> …
>
> Thanks,
>
> Jeff
>
> SA Jeffrey W. Holmes
> FBI Denver
> Cyber Squad

From: Eric Bolduan <erbolduan@outlook.com>
Sent: Fri 8/25/2017 7:39 AM
To: Holmes, Jeffrey W. (DN) (FBI) <jwholmes@fbi.gov>
Subject: RE: Other Emails and Messages

I am responsible for everything that was in the attached PDF document, except for the Tom Murphy Facebook message.  I'm responsible for posting the pictures to the websites you indicated.  Regarding the two email addresses - they were fake, not created.

…

With regards to my motivation, everything you indicated is correct.  The only thing I would add is that the first part - drawing attention to the revenge porn activity - is why I initially started posting these types of image galleries on porn sites.  However, it wasn't long before the motivation was anger and frustration, **with the intent of upsetting and frightening the victims and making them fear for their lives**.  Once that occurred, that first motivation was no longer present.  I only point that out because I don't want to imply that the motivation of drawing attention to revenge porn was a motivation throughout - that would sound like I'm trying to in some way rationalize/justify these behaviors and I have no desire to do that.  The first motivation was a misguided but well intentioned short lived phase that quickly progressed to the final motivation, a motivation for which there can be no justification.

20. On 12 July 2017, Stephanie Fabry, a female student athlete, at the University of Wisconsin received the following email. The email was sent from email address baldwin.eric.r@gmx.com. The email was sent from IP address: 24.197.218.13, assigned to Charter Communications. The University of Wisconsin Police Department served legal process to Charter Communications for subscriber information associated with the IP address and determined that it was assigned to the Bolduan residence internet connection. This was also confirmed by the Pen Register/Trap and Trace (PRTT) data for the Bolduan residence internet service which was still active on this date. The email is included below:

From: Eric Baldwin <baldwin.eric.r@gmx.com>
To: Stephanie Fabry <sfabry@wisc.edu>
Subject: Question regarding UW soccer team
Date: Wed, 12 Jul 2017 16:36 UTC

Hi Stephanie,

I'm a big fan of UW's soccer team.  I have a proposal that I'd like you to consider.  I am dying from cancer and am trying to cram as much enjoyment into my final months as possible.  You are a very talented and beautiful woman and I'd like the chance to spend just a little time with you.  I am not proposing anything sexual - just talk with you, hold your hand, and kiss you.  We could go to a movie, concert, sporting event, shopping, etc. - whatever you want to do.  I would pay for everything and would be willing to pay you however much you want for your time.

I'm sure I don't fit the profile of the typical person you would date, but I'm not asking you to devote a lot of time to me - just a single date.  I am a 42 year old white man, employed as a software engineer.  I had a fairly athletic build until my first bout with cancer in 2014.  The treatment was successful, but the uncertainty about the future caused by that experience led me to want to experience life as much as possible, including food.  My weight increased as a result, and has continued to increase as I had to face the fact that the cancer has returned and this time cannot be treated.  I am 6'2" and weigh 280 lbs.

If you do not want to be seen in public with an overweight 42 year old, I'd completely understand that.  However, if that is the case I'd ask you to consider a different proposal.  I want you to be happy and would anything you want to bring you pleasure.  If there is anything I can do to pleasure you - sexually or otherwise - just let me know.

This is a serious proposal - my only interest is in being able to think back fondly on the brief time I spent with you.  If you are not interested then please disregard this email.  If I don't hear back from you I will never contact you again.

Take care,
Eric

21. The email was also sent to Heather Rudnicki, another female athlete at the University of Wisconsin. Rudnicki also received an additional email from greene.trevor@gmx.com on 18 July 2017. This email also originated from the Bolduan residence internet connection. The email is included below:

From: Trevor Greene <greene.trevor@gmx.com>
To: Heather Rudnicki <hrudnicki@wisc.edu>
Subject: UW softball team member request
Date: Tue, 18 Jul 2017 14:43 UTC

Hi Heather,

I am looking for a woman (or a group of women) willing to beat me up.  I will pay you for your time.  I know that this is a very unusual request, but that is honestly all that I'm looking for - we meet up, you beat me up, and we're done.  If you are interested, please let me know.

Trevor

22. Additionally, emails from the baldwin.eric.r@gmx.com account were received by multiple female athletes at the University of Wisconsin Lacrosse campus. One of the emails was sent to Kayley Alioto on 13 July 2017 from the Bolduan residence internet connection. The email to Alioto is included below:

From: Eric Baldwin <baldwin.eric.r@gmx.com>
To: Kayley Alioto <alioto.kayleym@uwlax.edu>
Subject: Question regarding UW La Crosse swim team
Date: Thu, 13 July 2017 13:03 UTC

Hi Kayley,

I'm a big fan of UWLAX's swim team.  I have a proposal that I'd like you to consider.  You are a very talented and beautiful woman and I'd like the chance to spend some time with you.  I am willing to do anything you want in order to make you happy.  If you want me to buy you something, I will.  If you want me to do your cleaning and laundry, I will.  If you want me to give you oral sex, I will.  I'm willing to do anything that will give you pleasure.  All you have to do is tell me what you want and I will do it.

I am willing to pay you for your time - however much you deem appropriate.  This is a serious proposal - my only interest is having some fun this summer pleasuring you.  If you are not interested then please disregard this email.  If I don't hear back from you I will never contact you again.

Take care,
Eric

23. On 18 September 2017, Abigail Meredith, a cheerleader at the University of Alabama received the following email from allie.dimino@gmx.com. The email originated from an anonymous TOR IP address. Your affiant determined that gmx.com is a free email provider based out of Germany. Due to the threatening nature of the email The University of Alabama Police Department contacted GMX.com officials in Germany and requested records for the account. Records returned from GMX.com indicated that the account had been accessed from IP address 24.197.218.13, assigned to Charter Communications. The University of Alabama Police Department served legal process to Charter Communications and determined that the IP address was assigned to the Bolduan residence internet connection. Additionally, Abigail Meredith's name was found multiple times on the evidence seized from the Bolduan residence in June. Allie Dimino was a prior cheer teammate of Meredith's. In previous instances, Bolduan would use the name of coaches, teammates, family members or other people the victim associated with to create the email addresses used to harass and threaten them. The email received by Meredith is included below:

From: Allie Dimino <allie.dimino@gmx.com>
To: Abigail Meredith <aemeredith@crimson.ua.edu>
Subject: Cheer Athletics Royalcats question
Date: 18 Sept 2017 1:17 CDT

Hi Abigail,

I've been watching you since your first day on campus. The more that I see of you, the more that I want to see even more.

I'm sick of looking. You and I are going to spend this weekend alone together. To be clear, I'm not asking you - I'm telling you. One way or another, we are going to be alone and I am going to be inside you. By the end of the weekend I'll have dumped a load in every one of your holes at least once, and you'll have had nothing to drink that didn't come out of my body.

I'd prefer we do this the easy way. You agree, you lose one weekend, and then return to your life as normal. If you resist, I will get you and I will make you do what I want. I'm perfectly fine with causing you pain. In fact, I'd love to bash your

> head into the floor until your teeth are gone. I'd love to tie your legs up spread far
> apart and repeatedly kick you between the legs as hard as possible. But what I most
> want to do is pull every last hair out of your body - from your head and everywhere
> else. I'll keep the pretty hairs from your head and make you eat the rest.

24. Another search warrant was executed at the Bolduan residence on 5 October 2017 and Bolduan's new computer system was seized. Bolduan was also arrested and taken into custody. After being advised of his rights Bolduan consented to speak with the agents without an attorney present. Bolduan admitted to being responsible for the new harassing and threatening activity. Bolduan also admitted to using his home telephone and Google Chat accounts that he created, to leave harassing and/or threatening voicemail messages. Additionally, Bolduan admitted that he had used the email account, erbolduan@outlook.com, to send harassing and/or threatening emails.

25. Bolduan has remained in custody since his arrest on 5 October 2017.

26. A preservation request was sent to Microsoft Corporation on 19 October 2017 for the erbolduan@outlook.com account.

## EVIDENCE

27. Your Affiant knows from training and experience that persons engaged in computer intrusions and computer crime activity often communicate with others through correspondence or other documents (whether digital or written) which could tend to identify others involved in the activity. E-mail accounts can also be used as a place to forward or store victim related information, as in this situation.

28. Your Affiant knows from training and experience that the complete contents of e-mail accounts may be important to establishing the actual user who has dominion and control of an e-mail account at a given time. E-mail accounts may be registered in false names or screen names from anywhere in the world with little to no verification by the service provider. They may also be used by multiple people. Therefore, the content of a given account, including the e-mail accounts that send messages to a given account often provides important evidence regarding the actual user's dominion and control of an e-mail account.

29. Your Affiant knows from training and experience that criminals discussing their criminal activity may use slang, short forms (abbreviated words or phrases such as "lol" to express "laugh out loud"), or code words (which require entire strings or series of e-mail conversations to determine their true meaning) when discussing their crimes. They can also discuss aspects of the crime without specifically mentioning the crime itself. In the electronic world, it is even possible to use pictures, images and emoticons (images used to express a concept or idea such as a happy face inserted into the content of an e-mail or the manipulation and combination of keys on the computer keyboard to convey an idea, such as the use of a colon and paren ":)" to convey a smile or agreement) to discuss matters. Keyword searches would not account for any of these possibilities, so actual review of the contents of an e-mail account by law enforcement familiar with the identified criminal activity is necessary to find all relevant evidence within the account.

30. Your Affiant recognizes the prudence requisite in reviewing and preserving in its original form only such records applicable to the violations of law described in this Affidavit and in Attachment B in order to prevent unnecessary invasion of privacy and overbroad searches. Your Affiant advises it would be impractical and infeasible for the Government to review records produced by a Service Provider and keep only such records as the Government finds to be related to the offenses described herein and in Attachment B during a single analysis. Your Affiant has learned through practical experience that various emails often have unknown probative value and linkage to other pieces of evidence in the investigation until they are considered within the fluid, active, and ongoing investigation of the whole. In other words, the weight of

each individual piece of the data fluctuates based upon additional investigative measures undertaken, other documents under review and incorporation of evidence into a consolidated whole. Analysis is content-relational, and the importance of any associated data may grow whenever further analysis is performed. The full scope and meaning of the whole of the data is lost if each piece is observed individually, and not in sum. Due to the interrelation and correlation between e-mail threads, and any respective attachments, looking at one piece of information may lose its full evidentiary value if it is related to another piece of information, yet its complement is not preserved along with the original. In the past, your Affiant has reviewed activity within email accounts pursuant to search warrants in the course of ongoing criminal investigations. Your affiant has learned from that experience, as well as other investigative efforts, that multiple reviews of the activity in the account at different times is necessary to understand the full value of the information contained therein. In order to obtain the full picture and meaning of the data from the information sought in Attachments A and B of this application, the Government would need to maintain access to all of the resultant data, as the completeness and potential of probative value of the emails and data must be assessed within the full scope of the investigation. As such, your Affiant respectfully requests the ability to maintain the whole of the data provided by the Service Providers, and to review the communications in the control and custody of the Government and law enforcement at times deemed necessary during the investigation, rather than minimize the content to certain communications deemed important at one time. As with all evidence, the Government will obtain the mirrored images in its custody and control, without alteration, amendment, or access by persons unrelated to the investigation.

31. This application seeks a warrant to search all responsive records and information under the control of Microsoft Corporation, a provider subject to the jurisdiction of this court, regardless of where Microsoft Corporation has chosen to store such information. The government intends to require the disclosure pursuant to the requested warrant of the contents of wire or electronic communications and any records or other information pertaining to the customers or subscribers if such communication, record, or other information is within Microsoft Corporation's possession, custody, or control, regardless of whether such communication, record, or other information is stored, held, or maintained outside the United States. 2

## REQUEST FOR NON-DISCLOSURE AND TO KEEP ACCOUNT ACTIVE

32. Pursuant to 18 U.S.C. §§ 2703(b)(1)(A) and 2705(b), your Affiant requests the Court order Provider not to notify any other person of the existence of this warrant. This request is made because notification of the existence of the warrant will result in destruction of or tampering with evidence. Notification would inform the unknown individual(s) of the investigation and allow them to destroy or tamper with information from other yet unidentified accounts which may be related to the investigation.

33. Because the investigation is ongoing, I would further request the Court to order Provider to continue to maintain the account further detailed in Attachment A, in an open and active status.

## CONCLUSION

34. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

---

2 It is possible that Microsoft Corporation stores some portion of the information sought outside of the United States. In Microsoft Corp. v. United States, 2016 WL 3770056 (2nd Cir. 2016), the Second Circuit held that the government cannot enforce a warrant under the Stored Communications Act to require a provider to disclose records in its custody and control that are stored outside the United States. As the Second Circuit decision is not binding on this court, I respectfully request that this warrant apply to all responsive information— including data stored outside the United States—pertaining to the identified account that is in the possession, custody, or control of Microsoft Corporation. The government also seeks the disclosure of the physical location or locations where the information is stored.

35. Based on the aforementioned factual information, I respectfully submit that there is probable cause to believe that evidence, fruits, and instrumentalities of 18 USC 875(c) and 2261A(2)(B) may be located within the e-mail accounts described in Attachment A.

36. I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

*s/Jeffrey Holmes*
Jeffrey W. Holmes, Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this __20th__ day of October 2017

UNITED STATES MAGISTRATE JUDGE

Michael J. Watanabe

Application for search warrant was reviewed and is submitted by Valeria Spencer, Assistant United States Attorney.